UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte DIVISION
DOCKET NO. 3:16-cv-00016-GCM

| | |
|---|---|
| JAMES W. SMITH, | ) |
| Plaintiff, | ) ) ) |
| Vs. | ) ) **ORDER** ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**THIS MATTER** is before the court upon Plaintiff's Motion for Summary Judgment (Doc. No. 11) and the Commissioner's Motion for Summary Judgment (Doc. No. 13). Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.  Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits in May of 2012, alleging a disability onset date of April 15, 2010. Plaintiff's claim was denied both initially and on reconsideration; thereafter, Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ") at which Plaintiff amended his alleged onset date to April 25, 2012. After conducting a hearing, the ALJ issued a decision which was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council. On November 10, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision Defendant's final administrative decision on Plaintiff's applications. Thereafter, Plaintiff timely filed this action.

1

## II. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan*, *supra*.

## III. Substantial Evidence

### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5) Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). In this case, the Commissioner determined Plaintiff's claim at the fourth step of the sequential evaluation process.

### C. The Administrative Decision

The ALJ found at step one of the sequential evaluation that Plaintiff had not engaged in substantial gainful activity since April 25, 2012 (Tr. 14), and at step two that Plaintiff had the following severe, medically determinable impairments: diabetes mellitus, neuropathy, fibromyalgia, and degenerative-disc disease (Tr. 15). At the third step, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 17).

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform medium work, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he was further limited to "no more than occasional climbing of ladders." (*Id*.) In making this finding, the ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, as required by

3

20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. (*Id.*) While the ALJ found that the Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, he determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible (*Id.*).

At the fourth step, the ALJ found that Plaintiff could perform his past relevant work (Tr. 21) and, alternatively, at step five that jobs existed in significant numbers in the national economy that Plaintiff — given his age, education, work experience, and RFC — could perform (Tr. 21–22). Thus, the ALJ decided that Plaintiff was not disabled within the meaning of the Act. (Tr. 22).

### D. Discussion

Plaintiff has made the following assignments of error: (1) whether the ALJ adequately explained his reasoning for finding that Plaintiff did not meet the criteria of a Listing at Step 3 and (2) whether the ALJ adequately explained his residual functional capacity determination.

#### 1. The ALJ Properly Explained the Step 3 Finding That Plaintiff Did Not Meet Or Equal Listing 1.04(A)

At Step 3 of the Sequential Evaluation the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 416.920(d), and 404.1526, 416.926).

"For a claimant to show that his impairment matches a listing it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnotes and citations omitted). Likewise, "[f]or a claimant to qualify for benefits by showing that his . . . combination of impairments is 'equivalent' to a listed impairment, he must present medical

4

findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531 (footnote omitted).

The Fourth Circuit held "that Listing 1.04A requires a claimant to show only what it requires him to show: that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013) (citing 20 C.F.R. § 404.1509).

Listing 1.04A requires (1) a disorder of the spine, (2) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, with evidence of nerve-root compression characterized by (3) neuro-anatomic distribution of pain, (4) limitation of motion of the spine, (5) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, *and* (6), if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1.04A).

Plaintiff argues that Smith met all of the medical criteria for Listing 1.04A and consequently the ALJ erred by not conducting a full analysis of whether Smith's condition met or equaled the requirements of that Listing. The Court disagrees. There is substantial evidence to support the ALJ's step-three conclusion that Plaintiff did not satisfy its burden of proving that Smith's symptoms meet or medically equal the Listing 1.04A requirements. The ALJ specifically states that he considered the application of the *Radford* case and found that "the clinical findings do not show evidence of nerve root compression characterized by neuro-anatomic distribution of paint, limitation of motion of the spine, and positive straight-leg raising." (Tr. 17). In addition, the ALJ found "no evidence of motor loss . . . accompanied by sensory or reflex loss." (*Id*.). The ALJ reached these conclusions by examining the orthopedic exams in January 2013, December 2013, and January 2014 that showed normal reflexes, intact

5

sensation, and negative straight leg raising. (*Id.*). Based on these exams, the ALJ was able to conclude that Smith "does not have spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication." (*Id.*).

### 2. The ALJ Properly Explained The RFC Finding

The ALJ concluded that Smith has the residual functional capacity to perform medium work as defined in 20 CFR §§ 404.1567(c), 416.967(c) (Tr. 17). Plaintiff raises two objections to this conclusion based on medical evidence of Smith's impairments to engage in work activities which were not addressed in the ALJ's analysis. Plaintiff argues that (1) the ALJ did not discuss Smith's hand numbness and pain that was not relieved by pain medications and (2) the ALJ failed to consider that Smith requires the use of a cane because he has difficulty walking. (*see* Pl. Br. 10–13).

The Plaintiff is mistaken on both accounts. The ALJ began his analysis by stating that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence." (Tr. 18). The first symptoms the ALJ mentions is that "the claimant wrote on his pain questionnaire that he hand constant pain in his hands, feet, and legs . . . and he took Lyrica Celebrex, and over the counter medication but it did not help." (*Id.*). Later on in that same paragraph the ALJ mentioned that Smith "said that he has a cane, which was not prescribed, for about two years and that he uses it to keep from falling." (*Id.*). It is clear to the court that the ALJ did not overlook this medical evidence and considered it in its RFC finding.

After reciting the pain symptoms reported by Smith, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 19). In determinations of a claimant's credibility, an ALJ is accorded

6

deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.").

The Court finds that the ALJ had substantial evidence to reach this conclusion. The ALJ found that Smith's testimony and subjective statements regarding his pain and other symptoms was not credible because "it was inconsistent with the medical evidence and his activities of daily living." (Tr. 19).

The ALJ outlined these inconsistencies. First, records indicate that Plaintiff's pain was sometimes responsive to medication (*see* Tr. 19). For example, Plaintiff reported in October 2012 that Lyrica was helpful and in November 2012 that tramadol was helpful (Tr. 16, 19, 429, 430).

Second, "[a]lthough the claimant occasionally told his doctors that nothing relieved his pain, he repeatedly stopped taking medications that had been prescribed" (Tr. 19, 415, 418, 430).

Third, January 2013 treatment note indicates that, although Plaintiff reported that he had used a cane since about 2010 and that he was beginning to use a cane with ambulation due to feeling unsteady, he denied any frequent falls or weakness (Tr. 16.).

Fourth, Plaintiff reported severe pain: he said in December 2013, for example, that Lortab reduced his pain from 10/10 to 8/10 (*see* Tr. 415). However, this extreme allegation of pain, like Plaintiff's general allegation of disabling pain, is inconsistent with:

i) activity such as climbing a ladder (*see* Tr. 19);

ii) Plaintiff's — after falling off a ladder and landing on his sacrum, the general area from which the extreme pain supposedly radiated — having no difficulty with ambulation and denying, among other things, pain, numbness, tingling, and weakness

in his lower extremities (*see* Tr. 16);

iii) Plaintiff's discontinuing all prescription pain medication in favor of Tylenol when the pain became severe (*see* Tr. 19);

iv) Plaintiff's, after NSAIDs had ceased to be effective, "just . . . dealing with the pain" (Tr. 19);

v) and the generally conservative treatment that Plaintiff received. (*see* Tr. 19).

The ALJ gave substantial weight to the findings of the State agency medical consultants who "concluded that the claimant could sit for six hours in a work day, could stand or walk for about six hours in a work day, could push and pull, could lift and carry 50 pounds occasionally and 25 pounds frequently, had not postural limitations, had no manipulative limitations, and had no environmental limitations." (Tr. 20). The State-agency medical specialists are "highly qualified physicians . . . and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).

While the medical records contain evidence that the Plaintiff experiences pain and physical difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." *Seacrist v. Weinberger,* 538 F.2d 1054, 1056–57 (4th Cir. 1976). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Mickles v. Shalala,* 29 F.3d 918, 923 (4th Cir. 1994) (citing *Simmons v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987)). This is such a case, as it contains substantial evidence to support the ALJ's treatment of the record and his ultimate determination that the Plaintiff was not disabled.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales,* 402 U.S. 389 (1971). Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Id.* at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: January 30, 2017

Graham C. Mullen
United States District Judge